

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CURASHA ADAMS | 5:10-cv-01870 |
| VERSUS | JUDGE DONALD E. WALTER |
| WARE YOUTH DETENTION CENTER, LOUISIANA DEPARTMENT OF CORRECTIONS, LOUISIANA DEPARTMENT OF CORRECTIONS OFFICE OF YOUTH/JUVENILE SERVICES AND XYZ INSURANCE COMPANY | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment and a Motion to Dismiss[1] [Doc. #36] filed on behalf of Defendant, Ware Youth Center ("WYC"), pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Curasha Adams ("Adams"), opposes the motion. For the reasons assigned herein, the motion for summary judgment is **GRANTED**.

## SUMMARY OF FACTS

Adams was admitted as a resident of the new Intensive Resident Unit ("IR") at Ware Youth Center on October 13, 2009. [Doc. #36-1, ¶1]. According to Adams, Chiquita Ware[2] ("Ware")

---

[1] Because this Court is granting WYC's Motion for Summary Judgment, this Court need not consider the Motion to Dismiss based on WYC's assertion that Adams's suit was untimely.

[2] While Chiquita Ware and the Ware Youth Center share a name, it has not been alleged that there is a relationship between the two beyond the scope of Chiquita Ware's employment.

engaged in sexual misconduct with Adams in the staff station bathroom on December 13, 2009.[3] [Doc. #38-1, ¶2]. Adams reported the incident to Danisha Robinson, a social worker employed at WYC, on December 15, 2009.

WYC notified the Red River Sheriff's Office of the incident, and Detective Johnny Taylor was dispatched to investigate the allegations. Detective Taylor did not discover proof of sexual misconduct between staff members and residents of WYC. He did, however, find sufficient evidence to charge Ware with malfeasance in office. WYC terminated Ware's employment on December 15, 2009, the same day Adams reported the incident to Ms. Robinson. [Doc. #36-1, ¶5].

WYC hired Ware in August 2009 as part of the first training class for the IR. Ware was a 22 year-old, married, mother of one. A background investigation revealed that she had not been convicted of any crimes, and she had a stable and consistent work history with good references. [Doc. #36-1, ¶7].

Adams filed suit in federal court under 42 U.S.C. § 1983 on December 22, 2012, naming as defendants WYC, the Louisiana Department of Corrections, Louisiana Department of Corrections Office of Youth/Juvenile Services, and XYZ Insurance Company.[4] [Doc. #1].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[3] Adams described the incident in her deposition: "And she started kissing on me. So we kissed. And she put passion marks on me. And we touched each other." [Doc. #36-3 at 9].

[4] Claims against the Louisiana Department of Corrections and Louisiana Department of Corrections Office of Youth/Juvenile Services were subsequently dismissed. [Doc. #22].

to judgment as a matter of law."[5] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042,

---

[5] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## DISCUSSION

Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects, or causes to be subjected, any citizen fo the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

WYC is a political subdivision of the State of Louisiana. La. R.S. 15:1097(A). Accordingly, WYC cannot be liable for the constitutional torts of its employees under § 1983 based on a theory of *respondeat superior*. *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978); *McCall v. Peters*, No. 00-CV-2247-D, 2003 WL 21488211, *10 (N.D. Tex. May 12, 2003) ("[§ 1983] liability does not attach merely because a city employed a tortfeasor") (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). Instead, municipalities "can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Johnson v. Louisiana*, No. 09-55, 2010 WL 996475, *11 (W.D. La. March 16, 2010) (quoting *Monell*, 436 U.S. at 694). "To succeed on a

4

*Monell* claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* (citing *McGregory v. City of Jackson*, 335 Fed.Appx. 446, 448 (5th Cir. 2009)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

In her complaint, Adams identified two theories under which WYC is allegedly liable for the purported actions of Ms. Ware. First, that Defendants and their decision maker, with deliberate indifference, permitted Adams to be subjected to "unwelcome/unsolicited sexual harassment, sexual coercion, intimidation, retaliation, and sexual misconduct." [Doc. #1, ¶IV(a)]. Essentially, her first claim is that WYC is liable under a failure to train theory.[6] Second, Adams alleged that WYC is liable due to its policy of "selecting, retaining and assigning employees with demonstrable propensities to commit Sexual Harassment/misconduct." [Doc. #1, ¶IV]. In an amended complaint, Adams set forth additional details concerning her first claim, while failing to allege any additional information concerning her second theory of recovery.[7] [Doc. #23].

---

[6]*See* discussion *infra*.

[7]Specifically, Adams alleged that during the months between her arrival at the detention center in August 2009 and December 2009, five guards, Chiquita Ware, Tiara Ware, Cynthia Murphy, and two unnamed guards, subjected Adams to unwanted kissing, the placement of passion marks on her neck, fondling of her breast and vagina, lap dances, and attempts to force Adams to perform oral sex. Further, Adams alleged that on December 25th and 26th, 2009, she was sexually harassed and provided Xanax drugs and cigarettes, causing her to run away from the detention center. Adams alleged that the guards' actions violated WYC's sexual harassment policies, procedures and customs; and are also a violation of Adams's Fifth and Eighth Amendment rights.

### 1. Failure to Train

Adams alleged that WYC permitted her to be subjected to unwelcomed and unsolicited sexual harassment, sexual coercion, intimidation, retaliation, and sexual misconduct. [Doc. #1, ¶IVa]. Construed most liberally, this is a claim for failure to train.[8] Under § 1983, a municipality may be liable where "a pattern of unconstitutional conduct is so pervasive as to imply actual or constructive knowledge of the conduct on the part of the policy makers, whose deliberate indifference to the unconstitutional practice is evidenced by a failure to correct the situation once the need for training becomes obvious." *Washington v. City of Shreveport*, No. 03-20576, 2006 WL 1778756, *9 (W.D. La. June 26, 2006) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)).

To succeed under a failure to train theory, a plaintiff must show that "a municipality's failure to train its employees...amounts to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (quoting *Canton*, 489 U.S. at 388). Only if the deliberate indifference standard is satisfied can the municipality's actions be considered a policy or custom. *Id.* at 1360.

A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* Deliberate indifference may be established when policymakers continue to follow an approach that they know or should know has failed to prevent constitutional violations by employees. *Id.* However, without notice that a particular approach is deficient, decision makers "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

---

[8] Adams does not specify the policy or custom under which WYC permitted her to be subjected to harassment. Nevertheless, this claim will be analyzed under a failure to train theory as it appears to be her most viable theory of recovery.

6

WYC contends that Adams cannot show a pattern of constitutional violations sufficient to establish deliberate indifference on behalf of WYC. WYC notes that Adams admitted in her deposition that the sexual misconduct occurred on one occasion. Furthermore, Adams deposition testimony does not allege a connection between the alleged sexual misconduct and the coercion, intimidation and retaliation allegedly perpetuated by Cynthia Murphy. Accordingly, WYC argues, Adams testimony reveals several isolated incidents which, without additional evidence, are insufficient to establish a municipal policy or custom.

In response, Adams contends that several events evidence WYC's deliberate indifference:

> Chiquita Ware, a guard, kissing and fondling her (Deposition at 24–26); Chiquita Ware controlling, threatening and intimidating her thereafter (Deposition at 26); Laquinta Ware, another guard, performing similar acts on Sharkira Williams, another inmate (Deposition at 26–27); employees gave her Xanax, a controlled substance and cigarettes (Deposition at 34–37) and another employee, Cynthia Murphy, belittling, intimidating, and cursing Plaintiff (Deposition at 14-15).

[Doc. #38-1 at 9–10]. When construed most favorably to the Plaintiff, these events are still insufficient to establish the pattern of "similar constitutional violations" necessary to demonstrate deliberate indifference.

Prior incidents may show a pattern if they "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). A plaintiff must show "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001). "Isolated incidents," on the other hand, are insufficient to establish a pattern of violations. *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

Adams admitted that the allegations of sexual misconduct by Chiquita and Laquinta Ware occurred simultaneously and on only one occasion. [Doc. #36-3 at 5]. Additionally, assuming that Chaquita Ware threatened and intimidated Adams after the alleged sexual misconduct, the frequency and duration of such threatening behavior and intimidation is necessarily limited by the time line of events. The alleged sexual misconduct occurred on December 13, 2009. [Doc. #36-1, ¶9]. Ware's employment was terminated on December 15, 2009. [Doc. #36-1, ¶5]. By her own admission, Plaintiff is unaware if Ms. Ware worked on December 14, 2009. [Doc. #36-3 at 9]. Because Ware was terminated two days after the incident, there was simply no time for a pattern of constitutional deprivations to develop.

Adams also alleges that she was given cigarettes and Xanax in violation of her constitutional rights. Assuming these allegations are true, Adams admits in her deposition that she was only given Xanax once or twice. [Doc. #36-3 at 12]. Although she alleges in her deposition that she was given cigarettes "all the time," Adams states that the cigarettes were given to her by a "lady named Wendy." [Doc. #36-3 at 11]. Adams does not allege that Wendy participated in, or was even aware of, the alleged acts of sexual misconduct. As such, it appears that the cigarette gifts are wholly separate incidents from the alleged sexual misconduct.

Finally, Adams states that she was belittled, intimidated and cursed by Cynthia Murphy, and that these incidents contribute to a pattern of constitutional violations evidencing WYC's deliberate indifference. WYC cites case law from other circuits to support the proposition that "verbal harassment of a prisoner, without more, does not violate the Eight Amendment." [Doc. #41 at 4]; *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). For the purpose of this motion, this Court need not discuss whether Cynthia

8

Murphy's actions violated Adams's constitutional rights. Nothing in the record links Cynthia Murphy's intimidation to the alleged sexual misconduct of Chiquita and Laquinta Ware. Accordingly, Murphy's actions cannot be used to demonstrate WYC's deliberate indifference because her actions do not contribute to a pattern of *similar* constitutional violations—i.e., a pattern of sexual misconduct.

Adams essentially alleges four unrelated incidents in this case, only one of which was reported to WYC staff: (1) the alleged sexual misconduct and intimidation by Chiquita and Laquinta Ware on December 13–15, 2009; (2) the Xanax given to Adams; (3) the cigarettes Wendy gave to Adams; and (4) Cynthia Murphy's alleged belittling, intimidation, and cursing. Under Fifth Circuit case law the number of incidents alleged is insufficient to establish a pattern of constitutional violations. For instance, in *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009), the court held that 27 prior complaints were insufficient to establish a pattern of excessive force. In another case, the Fifth Circuit held that record evidence of 11 reported unconstitutional searches did not create a material issue of fact sufficient to defeat a motion for summary judgment on the issue of custom. *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Furthermore, in *Connick v. Thompson,* the Supreme Court held that four *Brady* violations were insufficient to establish a pattern of constitutional violations. 131 S.Ct. at 1360.

While it is true that, in certain circumstances, a single incident might give rise to § 1983 liability for failure to train, even absent a pattern of previous violations, this case does not appear to fall within the narrow circumstances contemplated by decisions recognizing that possibility. *See Canton*, 489 U.S. 378; *Brown v. Bryan County,* 219 F.3d 450, 459 (5th Cir. 2000). That is, where the need to train employees is "so obvious" that failure to do so can properly be characterized as

"deliberate indifference" to constitutional rights. *Canton*, 489 U.S. at 390 n.10. In *Canton*, the Court hypothesized that the need to train officers in the use of deadly force is "so obvious" that policymakers could be said to be deliberately indifferent to constitutional rights if they fail to train officers.

This case is factually distinguishable from the hypothetical posed in *Canton*. In that case, the Court noted the need for training in the use of deadly force is "so obvious" since arresting fleeing felons is part of a law enforcement officer's job, and the city provides the officers with guns. In this case, however, it can hardly be said that the possibility of sexual misconduct in the absence of training is "so obvious" that the failure to train could be said to be deliberately indifferent to the constitutional rights of inmates. The city does not provide the guards with the means to engage in sexual misconduct, nor is this type of behavior within the guards' job description.

The events Adams alleges, if true, are regrettable. Nonetheless, even accepting each of Adams's allegations as true, she has failed to carry her burden of demonstrating that a genuine issue of material fact exists for trial. This Court finds that, as a matter of law, the events alleged by Adams are insufficient to put WYC on notice that current training policies were leading to constitutional violations. Without notice that a particular approach is deficient, decision makers "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 131 S.Ct. at 1360. Moreover, Adams alleged in her amended complaint that the guards' actions violated WYC's "Sexual Harassment policies, procedures and customs." [Doc. #23 at 2]. Holding WYC liable for the guards' misconduct in this case would completely undermine *Monell* and impose liability under the theory of *respondeat superior*. "Adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the basis

for holding the city liable." *Canton*, 489 U.S. at 391.

Because Adams has failed to show a policy or custom sufficient to expose WYC to liability under *Monell* and 42 U.S.C. § 1983, her claim for failure to train is DISMISSED WITH PREJUDICE.

### 2. Hiring, Selection and Retention Policy

Adams's second theory of recovery is that WYC is liable for her injuries because, through its polices or customs, it "Select[ed], retain[ed], and assign[ed] employees with demonstrable propensities to commit Sexual Harassment." [Doc. #1, ¶IV]. To succeed on this claim, Adams must show conduct properly attributable to the municipality, as well as the causal link between the conduct and the deprivation of federal rights. *See Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). The Court finds that Adams is unable to meet her burden, and accordingly, this claim must be dismissed.

WYC contends that there is no evidence that it hires, retains, or selects employees with a propensity to commit sexual misconduct. Through the affidavit of Kenneth Loftin—the Executive Director of the WYC—WYC demonstrated that it performs a background check, including criminal background investigation, on all applicants prior to their being hired. [Doc. #36-4 at 2]. Furthermore, the affidavit shows that Ware, the employee in question, had not been convicted of a crime, and had stable and consistent employment records with favorable references. [Doc. #36-4 at 2]. WYC argues that, under the facts set forth in the affidavit, "there was no indication of a 'propensity' to commit the acts alleged" at the time Ms. Ware was hired. [Doc. #36-2 at 11].

Additionally, Mr. Loftin's affidavit shows that, upon receipt of Adams's complaints, WYC immediately notified the Sheriff's office. The Sheriff's office conducted an investigation into her

allegations. Although the detective's investigation did not uncover proof of sexual misconduct, the investigation did reveal sufficient evidence to charge Chiquita and Laquinta Ware with malfeasance in office. The two employees were subsequently terminated on the same day. As such, there does not appear to be a scintilla of evidence supporting Adams's claim that WYC has a policy of hiring, selecting, or retaining employees with a demonstrable propensity to engage in sexual misconduct.

Adams did not introduce any additional facts in her Response to WYC's Motion For Summary Judgment [Doc. #38] regarding her claim about WYC's hiring policies. Nor did she contest the facts asserted by WYC through Mr. Loftin's affidavit, and listed on WYC's list of undisputed facts. Remarkably, Adams has not identified a single disputed fact which would tend to weigh in favor of a finding that any of the alleged perpetrators had an identifiable "propensity" to commit the alleged acts of sexual misconduct. Accordingly, Adams's claim for hiring, selecting, or retaining employees with a propensity to engage in sexual misconduct is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons assigned therein, Defendant's Motion for Summary Judgment is **GRANTED.**

**SO ORDERED**, in Shreveport, Louisiana, this 4th day of September, 2012.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE